CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

RICHARD H. CAMPER, Admr.

| 199 | 569 |
|-----|-----|
| 208 | 276 |
| 199 | 569 |
| e114a²353 |  |
| 199 | 569 |
| 215 | 187 |

*Opinion filed October 25, 1902—Rehearing denied December 16, 1902.*

1. RAILROADS—*a railroad company is not required to fence station grounds.* The absence of fences and cattle-guards in depot or station grounds does not give rise to a liability upon the part of a railroad company for the death of a brakeman killed in the derailment of a train, caused by running upon cattle which had strayed upon the tracks on such depot or station grounds.

2. SAME—*when brakeman assumes risk of running engine backwards without pilot or headlight.* A brakeman put upon a branch run at his own request, who works there for over two months without objection, knowing the engine must run backwards upon return trips and knowing that it is not equipped with a pilot or headlight upon rear of the tender, assumes the risks incident to such conditions.

*C., B. & Q. R. R. Co.* v. *Camper*, 100 Ill. App. 21, reversed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. G. W. Brown, Judge, presiding.

This is an action brought by appellee, as administrator of the estate of Robert K. Camper, deceased, in the circuit court of Kane county, against appellant, the Chicago, Burlington and Quincy Railroad Company, to recover damages for the death of said Robert K. Camper, which was caused by an accident occurring upon the station grounds of appellant at Kasbeer, Illinois, November 15, 1900, while the deceased was employed as a brakeman on the Walnut branch of appellant's road. This branch line runs from Ladd, on the main line, to Walnut, a distance of twenty-two miles.

The declaration contained seven counts, alleging, respectively, (1) appellant's statutory duty to fence; (2) common law duty to fence; (3) statutory duty to maintain cattle-guards; (4) common law duty to maintain cattle-guards; (5) negligence in operating its engine without a headlight upon the rear of the tender while running backwards in the night time; (6) negligence because there was no pilot on the rear of the tender of its engine while running backwards; and (7) negligence because there was no turn-table at Walnut, the terminus of the branch line, so that its engines would not be compelled to run backwards from that point. The plea was the general issue. Appellee recovered a judgment for $5000, which judgment has been affirmed by the Appellate Court.

The deceased had been in appellant's employ as a freight brakeman for nearly two years, and had been on duty on this branch line and this particular run for over two months. He was given this run at his own request. On the night when the accident occurred, in making the trip from Ladd to Walnut he chose the position of rear

brakeman, so as to have the position of head brakeman on the return trip. The train left Walnut about midnight with eighteen car-loads of grain and a way-car, and was drawn by the engine running backward. It was not the intention that the train should stop at Kasbeer, which is a station about eight miles from Walnut, and while the train was running through the depot grounds at Kasbeer it struck some cattle that had strayed on the track from the highway, and the engine and part of the train were derailed, killing Camper. There was no turn-table at Walnut, the end of this branch line, and the locomotive had to run backwards on the return trip. It was not equipped with a headlight or pilot on the rear end of the tender, but had two white lights on the tender at the rear end. It seems that this was the usual way of running this train. Camper got in the cab of the engine when the train left Walnut on the return trip, and at the time of the accident was sitting on the seat in the cab, next to the fireman. As head brakeman he had the choice of positions for brakemen on the train, and chose the front end of the train for this return trip. He was the only person killed or injured in the accident. Appellant claimed that his post of duty when passing through station grounds was on top of the front car, and insists that he would not have been killed if he had been at his post. The evidence of the trainmen shows that it was the duty of the brakeman to be on top of the train in approaching and passing through stations; that when the train got to the whistling post, a half mile before reaching the station, it was his duty to get on top of his train and stay on top until after the train had passed through the grounds; that it was his duty to be there to give and take signals, and if the air-brakes failed to work to apply the old brakes. A printed rule of the company required brakemen, when not engaged in duty elsewhere, to occupy the posts assigned to them. Before Camper was employed by appellant he was required to commit

to memory a number of rules in regard to his duties, and one of these rules was that the brakemen should be out on the cars, ready to apply brakes, if required, when approaching and passing through stations. When not engaged elsewhere, the head brakeman rode in the cab with the fireman.

The station grounds were fenced on both sides of the track, except near the east end, where a highway crossed the track and connected with a street in the town of Kasbeer. There were wing fences and cattle-guards at both ends of the station grounds, which grounds are about three thousand feet in length. The public did not cross the track on the line of the highway, which intersected the railroad diagonally, but crossed a little east of the line of the highway, where there was a plank crossing, and then drove west till the highway was reached again. This road crossing is about three hundred and fifty feet west of the east end of the station grounds. The cattle, when struck, were between this road crossing and the east end of the station grounds. Appellee also charged as negligence that appellant did not put in a wing fence and cattle-guards just east of this road crossing, and claimed that appellant did not need this east three hundred and fifty feet for its station grounds. Appellant sought to show that all this ground was needed for switching purposes, and that cattle-guards at the place where appellee claimed they should have been, would make the work of switching extremely dangerous to its employees. The town of Kasbeer is not incorporated, but is laid out on one side of appellant's right of way only, and one of its streets is the highway above mentioned. On the station grounds are a depot building, corn-cribs, coal sheds, stock yards and a grain elevator. Besides the main track there is a passing track two thousand feet in length and a switch track about one thousand feet long. The passing track begins about seventy-five feet east of the road crossing.

At the close of appellee's evidence appellant moved the court to instruct the jury to find for appellant, which was overruled, and it renewed this motion at the close of all the evidence, which motion was also overruled. A number of interrogatories were submitted to the jury, and on the answers to these appellant moved for judgment, notwithstanding the general verdict. This motion was overruled. Motions for a new trial and in arrest of judgment were also made and overruled. Proper exceptions were taken to rulings of the trial court.

Albert J. Hopkins, Fred A. Dolph, and Robert B. Scott, (Chester M. Dawes, of counsel,) for appellant:

. If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury. *Simmons* v. *Railroad Co.* 110 Ill. 341; *Pennsylvania Co.* v. *Backes*, 133 id. 255.

A servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: First, that the appliance was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect and had not equal means of knowing the same with the master. *Garden City Spring Co.* v. *Boecher*, 94 Ill. App. 96.

When an employee, after having the opportunity to become acquainted with the risks of his situation, accepts them, he cannot complain if he is subsequently injured by such exposure. One may, if he chooses, contract to take the risks of a known danger. Presumptively he charges in such cases in proportion to the risk, or rather for the risk. *Camp Point Manf. Co.* v. *Ballou*, 71 Ill. 417; *Railway Co.* v. *Britz*, 72 id. 257; Wharton on Neg-

ligence, sec. 214; *Railroad Co.* v. *Munroe,* 85 Ill. 25; *Railroad Co.* v. *Geary,* 110 id. 383.

To entitle a servant to recover, he must show that the appliance was wanting or defective; that the master had knowledge of such want or defect, or ought to have had, and that the servant did not have such knowledge and did not have equal means of knowing with the master. *Howe* v. *Medaris,* 183 Ill. 288.

Murphy, Alschuler & Newhall, (Samuel Alschuler, of counsel,) for appellee:

Railroad companies are bound to use appliances which are reasonably safe for its employees, so far as the exercise of reasonable care might supply the same, and are presumed to have knowledge of all defects in construction. *Railroad Co.* v. *Rung,* 104 Ill. 641; *Railway Co.* v. *Estes,* 96 id. 470; *Railroad Co.* v. *Johnson,* 116 id. 206; *Railroad Co.* v. *Sanders,* 166 id. 270; *Railway Co.* v. *Barrett,* 166 U. S. 617.

Knowledge on the part of a servant of the existence of defects, without knowledge of the danger therefrom, does not amount to an assumption by him of the risk thereby occasioned. *Union Show Case Co.* v. *Blindauer,* 175 Ill. 325; *Railroad Co.* v. *Knapp,* 176 id. 127; *Howe* v. *Medaris,* 82 Ill. App. 515; *Swift & Co.* v. *O'Neil,* 187 Ill. 337; *Railroad Co.* v. *House,* 172 id. 601; *Railroad Co.* v. *Stevens,* 189 id. 226.

Trainmen cannot be presumed to have knowledge of the location of fences and cattle-guards, even though for years they may have passed over a given piece of railroad. *Railway Co.* v. *Williams,* 172 Ill. 379; *Railway Co.* v. *Johnson,* 116 id. 206; *Railway Co.* v. *Sanders,* 166 id. 270.

Employees do not take the risk of known defects in appliances where the employer holds out the promise of remedying the same. *Railway Co.* v. *Creighton,* 63 Ill. App. 165; *Brick Co.* v. *Sobkowiak,* 148 Ill. 573; *Drop Forge Co.* v. *VanDam,* 149 id. 337; *Steel Co.* v. *Williams,* 47 N. E. Rep. 26.

Convenience and safety of a railroad company and its employees furnish no valid excuse for failure to have

cattle-guards across the main and switch tracks outside of incorporated villages or cities. *Railroad Co.* v. *Franklin,* 53 Ill. App. 632; *Railroad Co.* v. *Thompson,* 48 id. 36; *Railway Co.* v. *Green,* 65 id. 414.

What portion of depot grounds of railroads at stations outside of incorporated cities and villages should be left open is a question of fact to be determined by the jury. *Railway Co.* v. *Green,* 65 Ill. App. 414; *Railroad Co.* v. *Franklin,* 53 id. 632; *Railroad Co.* v. *Thompson,* 48 id. 36.

Mr. Justice Carter delivered the opinion of the court:

The court, at the request of the defendant, gave to the jury this instruction:

"The court instructs the jury that the defendant company is not bound by law to fence its depot or station grounds, and if you believe, from the evidence, that the accident in question occurred upon the depot or station grounds of the defendant company at Kasbeer, Illinois, then, even if you should believe, from the evidence, that the cattle in question strayed upon such depot grounds because of the lack of fences and cattle-guards, yet the defendant company cannot be made liable because of its failure to fence such depot or station grounds, and on that issue you should find for the defendant."

Whether this was a correct instruction or not is not before us for decision, for the reason that appellee has not assigned cross-errors; (*Illinois Masons' Benevolent Society* v. *Baldwin,* 86 Ill. 479; *Stowell* v. *Spencer,* 190 id. 453;) but its practical effect was to dispose of the issue on the first four counts of the declaration so far as that trial was concerned, for the evidence was practically undisputed that the accident occurred on the station grounds, and the jury so found in answer to a special interrogatory submitted by the defendant. The verdict could then have been rendered only upon one or more of the remaining three counts,—that is, upon allegations that the defendant was guilty of negligence in not having a

turn-table upon which to turn the engine at the end of the branch line, so that it might run forward, and not backward, on the return trip, and in failing to have a proper headlight and a pilot or cow-catcher in front of the train as it was drawn by the engine running backward. Such being the issue, it became important to determine, in view of the evidence, whether the deceased had not assumed the risks incident to this manner of running the train. The evidence shows that he had been employed as brakeman by appellant about two years and on this branch line upwards of two months, and had been so employed on the branch line at his own request; that he had frequently worked as brakeman on the train when it was run in the manner now complained of. The jury found, in answer to special interrogatories, that he knew, at and before he made the trip upon which the accident happened, that there was no turn-table or other appliance at Walnut by which to turn the engine so that it might run forward on the return trip, and that he knew there was no headlight or pilot or cow-catcher on the front end of the train as it was then and had theretofore been running when returning from Walnut. Such being the state of the case and the facts being as set out in the preceding statement, the most important question remaining was, whether or not Camper, the deceased, had assumed the risk of the injury which he received. Indeed, a plausible argument is made by appellant's counsel upon the error alleged that the trial court refused to instruct the jury, at the close of all of the evidence, to find the defendant not guilty; but however close the case may have been on the evidence, the question was one of fact for the jury to determine,—that is, whether the risk was assumed by the deceased or not. It was, however, of vital importance to a fair consideration of the case that the jury should be properly and carefully instructed. The defendant asked, but the court refused to give, the following instruction:

3. "The jury are further instructed, as a matter of law, that an employee of a railroad company cannot recover for an injury suffered, in the course of the business about which he is employed, from defective machinery used therein, or from dangerous condition of the track or improper manner of running and operating a train, after he has knowledge of such dangerous conditions and continues his work without objection; and in this case, if you believe, from the evidence, that Brakeman Camper knew that there was no turn-table at Walnut, that the engine must back up on return trips, and that there was no regular headlight upon the engine in question and that there was no pilot upon the tender of such engine, and that he continued in such employment with knowledge of such conditions, without objection, then he assumed the hazards incident to such conditions, and if the injuries in question resulted from any of said conditions, plaintiff cannot recover on those issues and your verdict should be for the defendant."

True, the court gave, at the request of the defendant, another instruction, namely:

"The jury are instructed, as a matter of law, that a servant, when he enters the services of an employer, impliedly agrees that he will assume all risks which are ordinarily and naturally incident to the particular service in which he engages; and if the jury believe, from the evidence, that the injury to the plaintiff was only the result of one of the risks ordinarily incident to the work in which plaintiff's intestate was engaged, and not otherwise, then he cannot recover in this case, and your verdict should be for the defendant."

But this instruction was mainly abstract and wholly general in its character, and did not, as the other would have done, direct the attention of the jury to the real issue on which their verdict would have to be based, and to the evidence under that issue. We are of the opinion that the defendant was entitled to have said instruction

numbered 3 given to the jury, and that it was prejudicial error to refuse it.

At the time of the accident, while passing through the station grounds at Kasbeer, Camper was riding in the cab of the engine, and it was a question whether he was guilty of contributory negligence in being away from his post of duty when he was injured. This interrogatory was submitted to the jury: "Was it the duty of Robert Camper, deceased, when approaching and passing through the town of Kasbeer, to be on top of his train?" and the jury answered, "No." The evidence shows that it was his duty, as forward brakeman, in approaching and passing through stations, to be on top of the train and that the rules of the company so required. Unless the jury made a distinction between "the town of Kasbeer" and "a station," we are unable to find any evidence in the record to support their answer to this interrogatory. But even had the jury found that he was not at his post of duty when he was killed, but was in the cab of the engine, as the evidence shows he was, the plaintiff would not have been precluded unless the absence of Camper from his post of duty and presence in the cab contributed to the injury. Whether it did or not was a question for the jury, but when they answered "No" to the interrogatory, the question whether he contributed to the injury by his own negligence in the respect mentioned would logically receive the same answer. But as the case must be reversed for error in refusing the instruction mentioned and must be submitted to another jury, we deem it unnecessary to consider further the question raised by counsel on the overruling by the court of their several motions respecting the answers of the jury to this and other special interrogatories.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*