105    462
e213s  255

## Chicago City Ry. Co. v. Daniel Osborne.

1. APPELLATE COURT PRACTICE—*May Always Consider the Sufficiency of the Evidence to Support the Verdict.*—The sufficiency of the evidence to support the verdict is always a proper subject for the consideration of this court, and if it finds the evidence is not sufficient to authorize the judgment, it is the duty of the court to reverse on that ground, and a performance of this duty is absolutely essential for the preservation of rights, where the judgments of this court are final and conclusive upon all questions of fact.

2. INSTRUCTIONS—*Where Evidence upon Which a Recovery is Asked is Slight.*—Where the evidence upon which a recovery is asked is slight or doubtful, the jury should be fully and correctly instructed on all questions of law.

3. SAME—*Where Evidence is Evenly Balanced.*— An instruction that if the evidence in the case is evenly balanced as between the contention of the plaintiff and that of the defendant on the material issues the jury should find the defendant not guilty, is properly given where, under the pleadings, evidence, and instructions as given, the jury could not have been mistaken as to what the material issues were.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed January 16, 1903.

**Statement.**—The appellee recovered a judgment in the Circuit Court of $7,000 against the Chicago City Railroad Company for personal injuries claimed to have been sustained by him while in the act of boarding one of appellant's cable railway cars on State street, at or near its intersection with Adams street in the city of Chicago. The declaration consisted of four counts, all substantially alike, in which it is averred that appellant's train, consisting of a grip and two passenger cars, stopped on the southwest corner of State and Adams streets for the purpose of permitting passengers to alight from and to board the train and which was the usual and customary place for that purpose; that while the train was standing still and while appellee in the exercise of ordinary care was in the act of boarding the last car on the front platform, and while he

had one foot upon the first step and his right and left hands grasping the handles thereof, appellee, by its grip-man, negligently and suddenly started and put the same in motion before appellee had been given an opportunity safely to board it, by reason whereof he was thrown to the ground and injured, and said last car crushed the left leg of plaintiff so that the same had to be amputated between the knee and the thigh.

WILLIAM J. HYNES and WATSON J. FERRY, attorneys for appellant; MASON B. STARRING, of counsel.

W. D. MUNHALL, attorney for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

The sole averment of negligence in the declaration is that the car suddenly was started from the place where it had stopped, at or near the southwest corner of State and Adams streets, to permit passengers to alight from and to board it, without giving appellee proper and reasonable time to get on board.

To reverse this judgment appellant relies upon the following three grounds: First, the verdict is against the manifest weight of the evidence; second, error in the refusal to give proper instructions to the jury; third, improper and prejudicial remarks made by appellee's counsel in the presence and hearing of the jury. The sole issue of fact in this case is plain and well stated by counsel for appellee, whose statement is accepted by appellant and is as follows:

" The case resolves itself to the question: Was appellee endeavoring to board the car when it was at a stand-still at Adams street, as he claims, or did he attempt to get on at a point between 100 and 150 feet south of Adams street and while the car was in motion as appellant contends."

Adams and Quincy streets and Jackson Boulevard are at right angles to and extend west of State street. Quincy street is about 190 feet south of Adams street and Jackson Boulevard is about 194 feet south of Quincy street and

Quincy street between curbs is thirty-eight feet in width.
Appellee claims that he attempted to board the train while
it stood at Adams street. Appellant, on the other hand,
claims that appellee did not attempt to board the train
until after it had left Adams street and obtained a rate of
speed which made it dangerous for appellee to make such
attempt.

It is the duty of this court to reverse a judgment, if, after
a review of the evidence, we find that it is not sufficient to
authorize the judgment. If the verdict is manifestly and
palpably against the weight of the evidence a new trial
should have been granted. Witnesses for plaintiff and
defendant substantially agree in saying that plaintiff lay
north of and within about fifty feet of Quincy street, being
150 feet south of Adams street, while the plaintiff and his
companion, McQuade, state that he lay on or near the north
crossing of Quincy street. Having established with some
clearness the position where plaintiff lay, to wit, about 150
feet south of Adams street and about forty or fifty feet
north of Quincy street, we may proceed to determine from
the record where lies the clear preponderance of evidence
on the question, where did plaintiff attempt to board the
car. Plaintiff and his colleague, who on this holiday had
visited in company with each other one or two saloons just
prior to the accident, state that plaintiff attempted to board
the car while it was yet standing at Adams street, and to
the same effect is the testimony of the two girls, Miss
Hagin and Miss Roberts, who were sitting inside of the
closed car, and to the same effect is the testimony of William
Nagle, the witness who labored under so great a mistake as
to testify that plaintiff, after the accident, lay about a car's
length south of Adams street. On the other hand eight
witnesses, none of whom were on the car, and who were
not employes of the defendant company, testify that the
plaintiff, in company with McQuade, ran toward the car
after it had left Adams street and while it was in motion.
McQuade succeeded in getting onto the car, but plaintiff,
upon seizing hold of some part of the front portion of the

car, fell and was injured. The employes of the company state that plaintiff did not attempt to board the car at Adams street. Several of the witnesses testify that plaintiff and McQuade staggered as they walked and were under the influence of liquor. McQuade admits that he was not sober. To explain the fact that plaintiff was found near or within fifty feet of Quincy street, plaintiff and McQuade testify that after the feet of the plaintiff slipped and his right hand let go of the rod, he hung by his left hand and was dragged to the place where he lay. One of defendant's witnesses swears that Miss Hagin, immediately after the accident, told him that the plaintiff ran after and attempted to board the car when it was in motion. The conductor of the car in question states, and his testimony is corroborated, that he was on the rear platform of his car while it was standing at Adams street, and that after it started he went into his car and was near the middle thereof, collecting fares, when the outcry of accident was first made. The two girls, witnesses for the plaintiff, state that the car jerked and that the plaintiff then lost his grip and they shouted to the conductor to stop the car and he did so. Now in order to determine where the car must have been when this shouting took place and the prompt signal to stop was given, it is necessary to look into the evidence to find where the car actually stopped in response to this signal. The plaintiff's witness, Nagle, states that the rear end of an Archer avenue car was about three lengths south of Adams street when it stopped. But after careful comparison of the testimony of the various witnesses, it is found by the overwhelming preponderance of the evidence that the train did not stop until the rear end of the Archer avenue car had passed over and to the south side of Quincy street. So that if the plaintiff's witnesses are truthful and not mistaken as to the time and place when they first saw plaintiff attempting to board the car, then two things must be true: first, the plaintiff was dragged by his left hand from a point about thirty feet south of Adams to the place where he and his partner say

that he was found at Quincy street, or to a point within fifty or sixty feet north thereof, and second, the car must have run from the point where the two girls state they shouted and the conductor gave the signal, to the usual stopping place south of Quincy street.

The record of this case is very long, but we have been at great labor in carefully reading and comparing each and every part thereof, to find if the evidence under the law of this state is sufficient to sustain the verdict. Owing to the position of the girls and the excitement attending the accident and the manifest inaccurate statements of the witness Nagle, and the confused statements, if not brains, of the plaintiff and his partner, and further owing to the volume of testimony, not in all details the same, but unanimously agreeing as to the actions of the plaintiff and his partner, both as to their physical condition, and as to the place and manner of their attempting to board the train when in motion, we find it very difficult to resist the conclusion that plaintiff did not attempt to board the train until after it had left Adams street.

The foregoing review of the evidence has been made to show that there is serious question as to whether the verdict and judgment in this case are not clearly against the weight of the evidence. While it is the province of the jury to pass upon questions of fact and this court reluctantly interferes with the verdict of a jury where there is a conflict in the proof, yet, as the Supreme Court of this state has said, it is the duty of every trial judge to give careful attention to every part of the evidence in a case and to consider it with as much care as if the case were tried by the court without a jury; so the duty of this court is other than merely to record a judgment because based upon the verdict of a jury.

The sufficiency of the evidence to support the verdict is always a proper subject for the consideration of this court, and if it finds the evidence is not sufficient to authorize the judgment, it is the duty of the court to reverse on that ground. Gall v. Beckstein, 173 Ill. 187. A performance

of this duty is absolutely essential for the preservation of rights, where the judgments of this court are final and conclusive upon all questions of fact.   Chicago & Erie R. R. Co. v. Meech, 163 Ill. 305.

To induce this court not to consider the evidence, counsel for appellee have cited the North Chicago Street Railroad Company v. Fitzgibbons, 79 Ill. App. 634, where it is said "there was a decided conflict in the evidence."   An investigation of that case will show that it had been once before submitted to a jury, and with the like result, of a judgment entered upon the first verdict.   The first judgment was reversed in this court, because the verdict was held to be against the weight of the evidence, and upon second appeal this court allowed the judgment rendered at the second trial to stand.

In view of the state of the proof in the case at bar, the jury should have been accurately instructed as to the law. West Chicago Street R. R. Co. v. Dougherty, 170 Ill. 379; Schlesinger v. Rogers, 80 Ill. App. 420.   But where the evidence upon which a recovery is asked is slight or doubtful, the jury should be fully and correctly instructed on all questions of law.   Swift & Co. v. Rutkowski, 167 Ill. 156.

The court refused to give the following instruction asked by defendant:

" The jury are instructed that the issues in this case should be determined by them as in any ordinary suit, where an ordinary plaintiff sues an ordinary defendant to recover money, giving the verdict to the plaintiff only if the evidence preponderates in favor of the plaintiff's contention, and, unless it does so preponderate, you should as readily give the verdict for the defendant; and determining where the preponderance lies, while it does not consist solely in the greater number of witnesses, the jury are instructed that the greater number of reputable, creditable witnesses on the one side or the other of any material point is proper matter to be considered in determining the question of preponderance; and you may also consider the position of the witnesses at the time of the accident, the point of view from which they witnessed it, and everything which appeals to your judgment as affecting the value and reliability of their testimony."

It is suggested that, inasmuch as the jury were instructed at the request of appellee "that the preponderance of evidence in the case is not alone determined by the number of witnesses testifying to a particular fact or state of facts," etc., the foregoing instruction was unnecessary; but in our opinion, under the circumstances of this case, this last instruction did not fully take the place of the refused instruction. While by a careful process of reasoning the refused instruction might be in part evolved, yet it is very doubtful whether, in this case, it was done by the jury. The refused instruction contained a correct principle of law applicable to the controversy which was not included in any instruction given. Some minor criticisms of the instruction have been made, but we think, as peculiarly applicable to this case, it should have been given.

The court refused the following instruction:

"The jury are instructed that if, under the instructions of the court, they find from the evidence in this case that the plaintiff is not entitled to recover, then they will not have occasion to at all consider the question of damages."

It is not a fit preparation for the jury, dispassionately to consider the question of liability, to proceed first with the discussion of the probable and serious consequences of the injury, and then with sympathies aroused and unavoidably expressed, to return to a consideration of the question of liability. It is conducive to the best results and is proper caution for the court to advise the jury in the language of this refused instruction. Its refusal would not alone work a reversal in this case, but it ought to have been given. We have considered the following refused instruction:

"If the evidence in the case is evenly balanced as between the contention of the plaintiff and that of the defendant, on the material issues, the jury should find the defendant not guilty."

The court instructed the jury in another place what were the material issues, but it must be conceded that the instruction was negative and therefore may not have with sufficient clearness told the jury as a matter of law what were the material issues in the case. However, after con-

sidering the narrowness of the issue in this case, and that under the pleadings and the evidence and the instructions as given, the jury could not have been mistaken as to what the material issues were, we are of opinion that this instruction should have been given. Experience with juries convinces us that unless a jury is specially instructed what to do in case they find that the evidence is evenly balanced as between the contention of the parties, they do not know the law, and if they return a verdict at all in such case, it is liable to be dictated' by passion or sympathy.

Complaint is made of certain remarks of appellee's counsel. It appears a juror, when being examined by appellant's counsel, stated that he had had an unsatisfactory experience with a railroad company and made some severe strictures upon the methods adopted by that company in defending a lawsuit, and further stated that he thought that the defendant company in this case, before accepting him, ought to know of his experience. This unfortunate episode was not brought out through the fault of attorney for defendant company, but counsel for appellee, in his closing argument, took advantage of the situation by making the following remarks, in his closing address to the jury :

"I know it hurts you, Mr. Hynes; you don't want sympathy on one side, but you want it on the other. Nobody has mentioned sympathy in this case but the defendant. Anything that has been brought into this case about any prejudice that might exist against railroad companies was brought out by Mr. Hynes himself in the examination of jurors. I am not to blame for that; if anything has been exposed on the examination of jurors before he accepted them as jurors, I am not to blame for it. If any methods have been spoken of—

Mr. Hynes : Exception to that.
The Court : Note the exception; I did not catch it.
Mr. Hynes : I will save the exception."

Appellant's attorney did everything that was necessary to preserve an exception to this most improper language. The court did not hear these words, otherwise he would certainly so have expressed his disapproval, as in part to have corrected the wrong. There was nothing said upon exam-

ination of jurors to warrant in a final speech to the jury a reference to exposure of methods of the defense, and the only effect of such reference by counsel for appellee tended to impute to the defendant company the methods which the juror said had been resorted to unfairly by some other railroad company to win a lawsuit.

Counsel further, in commenting upon the testimony of a policeman, one of defendant's witnesses, stated that the courts have held that the testimony of police officers, in cases in which they are prosecuting, ought to be looked upon with suspicion. The officer was not prosecuting in the case at bar, and the law was not properly stated. The learned counsel for appellee was evidently carried away by his zeal, and we are unable to say that the jury were not swept along by these inflammatory and improper remarks, which were calculated to excite in their minds a prejudice against the defense. Hennies v. Vogel, 87 Ill. 242; C. & E. R. R. Co. v. Binkopski, 72 Ill. App. 22.

In an action where the plaintiff seeks to recover thousands of dollars from the defendant, the breath of passion through the zeal or forgetfulness of counsel must not disturb the most solemn and deliberate consideration of the jury entrusted with duties and responsibilities so important.

It is better that a case be retried than to sustain a verdict tainted with any unfairness. It must be said that counsel for appellee, upon objection, desisted from further making these harmful remarks, showing that he was not actuated by wrong intention, but the words had gone forth and in the language of this court "the mischief had been done." Porter v. Day, 44 Ill. App. 257.

The judgment must be reversed and the cause remanded.