## Chicago Union Traction Company v. Christina Hansen.

### Gen. No. 12,128.

1. INSTRUCTIONS—*when party may except to giving of.* A party has a right to except to the giving and the refusing of instructions at the time they are respectively given or refused, and the court is without power to preclude a party so excepting to urging as grounds for new trial, the rulings upon such instructions by submitting the instructions proposed to be given and refused prior to the final giving or refusal of the same, and suggesting at the time of so submitting the same to the respective counsel, that criticism be then made, and that if not then made, none would thereafter be entertained.

2. INSTRUCTIONS—*right of party to have theory given to jury.* Where the evidence tends to sustain a party's theory of a case, he is entitled to instructions specifically upon such theory, where he has asked such instructions.

3. ORDINARY CARE—*defined.* Ordinary care is such care as a person of ordinary prudence and caution would have exercised in the circumstances surrounding the plaintiff or in like circumstances.

4. ORDINARY CARE—*when instruction as to, cannot be complained of.* An instruction requiring the exercise of a higher degree of care than the law demands cannot be complained of by a party against whom it was not directed.

5. INTEREST OF PLAINTIFF—*defendant entitled to have instruction given as to.* A defendant corporation is entitled to have the jury instructed with respect to the interest of the plaintiff as affecting his credibility.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed December 4, 1905.

JOHN A. ROSE, ALBERT M. CROSS and HENRY W. BRANT, for appellant.

Thomas E. Rooney, for appellee.

Mr. Presiding Justice Adams delivered the opinion of the court.

This is an appeal from a judgment recovered by appellee against appellant for the sum of $4,000.

The original declaration contains four counts, and an additional count was filed March 31, 1904. The negligence averred in each count is as follows:

First count. That while the plaintiff was in the act of getting on one of defendant's cars, at or near the intersection of Madison and State streets, defendant, with great force and violence, suddenly started the car, by reason of which plaintiff was thrown upon and against the car with great force, etc., and was injured, etc.

Second count. That defendant negligently failed to stop the car a reasonable length of time to enable plaintiff to enter it.

Third count. Negligent failure to keep proper watch or lookout, so that the car would not be started before plaintiff had safely boarded or entered it.

Fourth count. Negligent management of car, *per quod,* plaintiff, while attempting to board the same, was injured.

Additional count. Negligence in starting the car, while plaintiff was attempting to get on it, and while she was a passenger, etc.

The appellant pleaded the general issue.

The train which appellee claims she attempted to board at the time of the alleged injury was a Milwaukee avenue train, consisting of a combination grip-car and one trailer, and was operated by a cable. There was a conductor on the grip-car and also on the trailer or rear car. The route of the car was east on Madison street, an east and west street, to State street, a north and south street. A train turns into State street by a curve of the track to the left, so that when it passes the curve it is headed directly north in State street. It then proceeds north in State street one block, to the intersection of State and Washington streets, the latter street being an east

and west street.    It then turns into Washington street, by a curve to the left, and proceeds west in Washington street, on its return trip westward.    When the train in question moved east toward State street, on Madison street, and was nearly to the curve at the intersection of Madison and State streets, it was stopped to discharge passengers.    The plaintiff testified, in substance, that she walked from the south side of Madison street to the rear platform of the trailer, or rear car; that the conductor of that car was on that platform and faced toward her; that the car was standing; that she grabbed the zinc or metal of the dashboard of the platform with her left hand, and put her left foot on the step; that she had in her right hand a package of six oranges and an umbrella, and the car started, and the conductor ran to her, grabbed her by the cape and pulled her up so that she had both feet on the step; that she went backwards and was about to fall off, when the conductor grabbed her and held her in that position till the car reached Washington street and stopped, when he pulled her onto the platform and said, "Get in there."    The following question and answer occurred in her examination:

Q.    "State whether or not, when the car started, and while it was going around State street, and while it was making the turn on Washington street, whether or not you had succeeded in getting any more of your body on the car?    A. No, I did not get any more on the car before the car stopped, and then the conductor pulled me up:"

The attempt of plaintiff to board the car occurred November 29, 1900, between two and three o'clock p. m.    She is married, was about 53 years old at the time of the alleged injury, and weighed about 185 pounds.    She testified that the conductor was a small man.

Bernard Bennigsen, the conductor of the rear car, testified, in substance, that when the car had nearly reached State street the train stopped and the passengers were unloaded, and a lady and child boarded his car and took a seat in it, and he then rang the bell and the car started up, and the train was moving unusually slow, very slowly, around the curve, when he saw appellee standing in the street, with a

bundle in her hands about two feet long and a foot in diameter, and that she threw the bundle on the platform and took hold of the grab-iron of the car and the grab-iron of the dashboard, and stepped pretty swiftly onto the car; that he was standing near the edge of the platform and put his hand out and grabbed her on the back, and, with his left hand reached up and gave three bells, the emergency signal, and the car moved four feet and came to a standstill, and appellee stepped onto the platform and went into the car and sat down. Also, that when he put out his hand to assist her, he only held her as long as it took the car to move four or five feet, and that where she attempted to get on the car was about where the curve rounding into State street commences.

Ernest G. Wetzell, conductor of the combination grip-car, testified that the first he knew of the matter, he got and gave to the gripman three bells to stop; .that they were going slowly around the curve, and that the gripman applied the brakes and stopped the car, and that appellee then went into the car and sat down. Witness also testified that, at the time he received the emergency signal, the front end of the train was on State street and the rear end on the curve, and that, after he gave the emergency bell, the train ran from three to five feet. The gripman testified, in substance, that all he knew about the matter was, that he went very slowly around the curve, and when he was around it, the emergency bell sounded and he stopped immediately.

It is apparent from the foregoing evidence that appellee's testimony that the car was standing when she tried to board it, is directly contradicted by the conductor of the rear car, and that her testimony that she stood on the step of the rear platform, held there by the conductor until the train turned west onto Washington street, is contradicted by both the conductors. The conclusion we have reached renders it unnecessary to refer further to the evidence.

Before the court instructed the jury the presiding judge handed to the attorney for each of the parties a set of the instructions, including all those which had been marked given and those which had been marked refused, and re-

quested them to make such criticisms in respect to the instructions as they would thereafter make, on motion for a new trial, and intimated to the attorneys that criticism or objections not then made he would treat as waived and would not consider on motion for a new trial. The attorney for each party protested, and said he was not then prepared to point out objections to the instructions which the court proposed to give to the jury for the other party. Appellee's counsel now contends that appellant is precluded from making objections to instructions which it did not urge in the trial court, as requested by the court. This contention cannot be sustained. In Hake v. Strubel, 121 Ill., 321, 326, the practice is thus stated: "By an unbroken line of decisions it has been held by this court that the exception must be taken at the time the alleged erroneous ruling or decision was made; and, also, that the bill of exceptions should show upon its face that the exception was taken at the time, and the bill signed, sealed and filed during the term. But to meet the varying exigencies, and for the convenience of bench and bar, the practice early obtained of allowing time in which to present the bill of exceptions, by an order entered of record in the cause, or by a written stipulation of parties filed in the case; and the time thus allowed often extended beyond the term, and the correctness of this practice has been repeatedly sanctioned by this court. See Evans v. Fisher, 5 Gilm. 453; Burst v. Wayne, 13 Ill., 664; Brownfield v. Brownfield, 58 id., 152; Goodrich v. Cook, 81 id., 41."

The bill of exceptions in this case, which is signed and sealed by the presiding judge at the trial, and is part of the record, shows that appellant excepted to the giving of each of appellee's instructions, and to the refusal of such of appellant's instructions as the court refused to give, and that the exceptions occurred at the times of giving and refusing the instructions. Parties, by the well-established practice, have the right to urge, on motion for new trial, objections to the giving or refusal of instructions, and it is not within the power of the trial court to change the practice or unreasonably limit the right, and a party moving for a new trial

should have reasonable time and opportunity to consider the instructions of the opposing party, and present to the court such objections as he may have to the same. Such course enables the trial court to review its rulings on instructions, when, if it finds the giving or refusal of any instruction fatally erroneous, it should set aside the verdict and grant a new trial, thus saving the delay and expense of an appeal or writ of error.

Appellant's counsel object to the appellee's 2nd, 3rd and 4th instruction. The 2nd is as follows:

"The court instructs the jury that ordinary care depends upon the circumstances of each particular case, and is such care as a person of ordinary prudence and skill would usually exercise under the same or similar circumstances."

The word "skill" should not have been used in the instruction, but the use of it could not prejudice the appellant, as it requires a greater degree of care on appellee's part than the law requires. Neither do we think that the word "usually" should have been used. Ordinary care is such care as a person of ordinary prudence and caution would have exercised in the circumstances surrounding the plaintiff, or like circumstances. Chicago City Ry. Co. v. Schuler, 111 Ill. App., 470, 472.

Appellant's 18th instruction defines ordinary care thus: "Ordinary care is such care as a person of ordinary prudence would exercise under the same or like circumstances." We do not think the jury could have been misled, to appellant's prejudice, by the 2nd instruction. We find no reversible error in appellee's 3rd and 4th instructions, or either of them. Appellant complains of the refusal to give the 5th, 6th, 8th, 9th and 10th instructions requested by appellant. The 5th and 6th instructions are to the same effect. The 6th is as follows:

"6. The court instructs the jury that if you believe from the evidence, under the instructions of the court, that the plaintiff attempted to board or enter the defendant's car

after said car had started and was in motion, and if you believe from the evidence under the instructions of the court, that the plaintiff's act in so attempting to enter or board said car when same was in motion, was negligent and contributory to her own injury, if you believe from the evidence she did so attempt to enter or board said car when the same was in motion, then the jury should find the defendant not guilty."

Appellant's theory, which the evidence tends to sustain, is that appellee attempted to board the car while it was in motion, and after it started to move around the curve at Madison and State streets. When the evidence tends to support the theory of a party, he is entitled to have the jury instructed on that theory. Chicago Heights Land Ass'n v. Butler, 55 Ill. App., 461; Fessenden v. Doane, 89 ib., 229; Same v. Same, 188 Ill., 228, 232; Kendall v. Brown, 74 ib., 232.

The instruction is not covered, as appellee's counsel contends, by appellant's 18th and 19th instructions, or either of them. Instruction 18 is an instruction, in general terms, stating that it was incumbent on the plaintiff to prove that she exercised ordinary care, and instructing the jury that if they believed from the evidence that she did not, and that her want of ordinary care caused, or proximately contributed to cause, the injuries complained of, they should find the defendant not guilty. It was a material and contested question whether or not the car was standing or had started, when appellee attempted to board it. The conductor of the car and appellee were the only witnesses as to that question, and their evidence is directly contradictory, as we have shown. The appellant was entitled to a specific instruction on the question, directing the attention of the jury to the question, which the general instruction 18 did not. Railroad Co. v. Camper, 199 Ill., 569, 577; Mallen v. Waldowski, 203 ib., 87.

Instruction 19 for appellant is not a substitute for the refused instruction, because it excludes all negligence on the part of the defendant, which the refused instruction did not.

There is some awkward repetition in appellant's 6th refused instruction, but we are of opinion that it, or its equivalent, should have been given, and that its refusal was error.

Appellant's refused 8th instruction is as follows: "8. The jury are instructed that while the law permits the plaintiff in the case to testify in her own behalf, nevertheless the jury have the right in weighing the evidence to determine how much credence is to be given to it, and to take into consideration that she is the plaintiff and interested in the result of the suit."

In W. C. St. R. R. Co. v. Dougherty, 170 Ill., 379, the trial court refused to give to the jury an instruction word for word the same as instruction 8. This court affirmed the judgment of the trial court; but the Supreme Court reversed the judgment of this court, on the sole ground that the refusal of the instruction was error, and remanded the cause. In Schlesinger v. Rogers, 80 Ill. App., 420, the following instruction asked by the defendant was refused: "The jury are instructed that, in considering the weight to be given to the testimony of the plaintiff, Belle Rogers, you have a right to take into consideration that such testimony is given by the plaintiff in the suit." The court say, ib. 422: "This instruction was proper, and where, as in this case, there is a sharp conflict of evidence, and it is important that the jury should be correctly instructed, its refusal was error," citing W. C. St. R. R. Co. v. Dougherty.

The statute, which, modifying the common law rule, permits a party to a cause to testify, expressly provides that the interest of a party testifying "may be shown for the purpose of affecting the credibility of the witness" (Rev. Stat. C. 51, sec. 1); that is "shown" to the jury for the evident purpose of having the jury consider the interest of the party in passing on the credibility of his testimony. The question, therefore, in the last analysis, is whether the court should refuse to instruct the jury as to the law clearly applicable to the facts in evidence. This question cannot be correctly answered otherwise than negatively. We think the refusal of appellant's instruction 8 is reversible error.

We think appellant's 9th instruction should have been given, but in view of appellee's 3rd instruction, which correctly states how the credibility of witnesses should be determined by the jury, we are not inclined to hold that its refusal is reversible error.   Cicero St. Ry. Co. v. Rollins, 195 Ill., 219.

We also think that appellant's 10th instruction should have been given.   Chicago City Ry. Co. v. Osborne, 105 Ill. App., 462, 467.   The case is, as we have shown, a very close one, on the evidence, for appellee.   In such case the jury should be properly and accurately instructed, and the defendant should have such appropriate instructions as the evidence warrants.   The refused instructions 9 and 10 have frequently been approved. · In view of our conclusions, and as there may be another trial, we deem it inexpedient to pass on the question, whether the verdict is, or not, contrary to the weight of the evidence.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*